## EQUITABLE SURETY CO. v. NATIONAL CAPITAL BANK OF WASHINGTON, D. C. (CARRY, Intervener).

(Court of Appeals of District of Columbia. Submitted January 5, 1922. Decided March 6, 1922.)

No. 3513.

1. **Principal and surety ⟐175—Evidence held to show stock was deposited on condition not accepted by surety.**

Evidence that a government contractor, who had previously deposited securities with the surety on his bond to indemnify it against loss, thereafter made a deposit of other stock owned by one interested in a corporation, which took a partial assignment of the contract to be substituted for the stock originally deposited, *held* to show that the second deposit was made on condition that the stock first deposited be released, so that the surety could not retain the second deposit after having refused to release the first.

2. **Appeal and error ⟐231(5)—Exception to each and every letter introduced in evidence is too general.**

Where the record showed that certain letters offered in evidence by defendant were admitted over the objection of the plaintiff, and that an exception to the ruling of the court on each and every offer was allowed, the objection was too general for review.

3. **Appeal and error ⟐1050(1)—Introduction of letters, whose substance had been stated without objection, is not prejudicial.**

A party is not prejudiced by the introduction in evidence on behalf of the adverse party of letters, the substance of which had been previously stated without objection by a witness.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Equitable Surety Company, a corporation, against the National Capital Bank of Washington, D. C., to enjoin the delivery of securities deposited with it, in which Albert Carry intervened. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Thomas C. Bradley, of Washington, D. C., for appellant.

Alexander H. Bell and P. H. Marshall, both of Washington, D. C., for appellees.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District dismissing appellant's bill to restrain the appellee, the National Capital Bank, from delivering certain securities deposited with it by the appellee and intervener Carry for the alleged purpose of indemnifying appellant against loss under a certain bond

---

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of guaranty between M. A. Brast and the United States, under which Brast was to drill an oil well on each of 32 subdivisions of land of the Osage Indian Tribe in Oklahoma, within a time certain.

The facts as developed by the evidence are substantially as follows: On November 22, 1913, the Department of the Interior approved an oil and gas lease to M. A. Brast, embracing 32 tracts or subdivisions of land in the Osage Reservation, Oklahoma. Appellant was surety on Brast's bond, and, in the event of his failure to drill one well on each of these tracts within one year from the date of the approval of the contract, he and his surety were liable to pay to the United States as liquidated damages the sum of $2,000 for each well not so drilled. As a condition precedent to appellant's assuming this obligation, it demanded and received indemnity against loss by the deposit with it of collateral securities furnished by A. W. Hurley and others, who, in consideration, received an interest in the Brast contract. On December 2, 1913, Brast assigned 16 of the 32 parcels embraced in his lease to the Summit Oil & Gas Company, a West Virginia corporation, subject to the consent of appellant and the Interior Department. On December 15th following Mr. Carry, who was interested in the Summit Oil & Gas Company, and certain of his associates, arranged with the appellee bank to become the depository of certain shares of stock belonging to Mr. Carry, of the then value of about $23,000, and the bank issued a certificate under that date, in which it was recited that the stock was to be held by the bank to secure appellant, as its interests might appear, "in connection with a certain bond in the sum of $96,000 executed by the said the Equitable Surety Company to guarantee the faithful performance of a certain contract by one M. A. Brast," etc. This certificate was in triplicate, one copy being filed with the stock and the others handed a representative of the Summit Oil & Gas Company.

Up to this time appellant, so far as the record discloses, had not been consulted and was without knowledge of what had occurred. Its vice president, who conducted the negotiations relative to the Carry stock, testifying for appellant, was asked as to the circumstances under which he saw the bank certificate of December 15th, and replied:

"Why, the Equitable Surety Company had become surety upon a certain bond or bonds for M. A. Brast covering oil leases, and this certificate was presented for the purpose of making the substitution of the collaterals called for in this certificate for certain indemnities which we had taken on the bonds or on the bond. * * * My understanding was that parties interested desired to substitute the stock for certain other indemnities or collaterals which the company held on the bond."

On cross-examination the witness stated that he—

"carried on the negotiations looking toward the substitution of that [the Carry stock] for other indemnities or collaterals, but does not know whether the Equitable Surety Company still has the original collaterals that were deposited with it."

Mr. Hurley, testifying for appellant, admitted on cross-examination that the securities he had furnished appellant were still held by it. Asked whether Carry and his associates were to supply indemnifying

securities, to be substituted for those that had been deposited with the Equitable Surety Company, he answered in the affirmative. He then was asked whether that substitution ever was made, and replied:

"No, sir; that is, not to the extent of letting our stock down"—in other words, that his stock still was held by appellant.

The witness further testified that the substitution referred to in certain letters he had written and which were shown him—

"was never adjusted; that to the knowledge of witness the Equitable Surety Company never determined the value of the securities mentioned in said Exhibit A (the Carry certificate), and never released any of the securities deposited by the original indemnitors; that on the 14th day of February, 1914, the only real collateral accepted by plaintiff was that put up by witness and his associates, and that the stock deposited by Carry was to be substituted for his [Hurley's], but had never really been accepted in any amount."

Mr. Charles E. Goettman, secretary of the Summit Oil & Gas Company, testifying for appellant, said he was at the National Capital Bank on December 15, 1913, when the Carry certificate was issued and that—

"the purpose of the meeting was to get some stocks of Mr. Carry's to substitute as collateral for securities previously put up by Hurley and his associates as indemnity on the original bond of Brast."

Witness took a copy of the certificate to Kansas City, where he interviewed the vice president of appellant company, who "would not agree to substitute it" but expressed a purpose to "investigate it and see the value of it." Witness further stated that—

"the Equitable never refused to consent to the assignment, but they did refuse to substitute this collateral for the collateral that was already up; * * * that the Equitable Surety Company never questioned giving consent to this assignment so long as the original bond was in force; that the only question troubling them out there was the substitution of the Carry stock for the Hurley stock."

Asked why he did not withdraw the Carry certificate of deposit, witness replied that Hurley thought he could get the Equitable to consent to the substitution later on; that in his correspondence Hurley represented:

"That he really had a gentleman's agreement whereby they would substitute it, and now they refused to do so."

Appellant, on December 18, 1913, assented to the assignment to the Summit Oil & Gas Company, and on January 14, 1914, that assignment was approved by the Interior Department.

At the time of the filing of the original bill, suit had been brought by the United States against the Summit Oil & Gas Company, Brast, and the appellant, on account of the failure of Brast and his successors and assigns to drill the oil wells. After judgment had been obtained in that suit, appellant filed a supplemental bill for a receiver to take charge of the stock held by the appellee bank, and for general relief. Thereupon Carry obtained leave and intervened.

The only evidence introduced by defendants were the letters written by Hurley to Goettman, as the representative of the Summit Oil & Gas Company, and concerning which Hurley had been fully questioned without objection.

[1] The trial court found, and in our view the conclusion was irresistible, that—

"the offer of this stock was conditional, and that the only demand that was made for this stock was with a view to the bringing of a suit, but this was after the lease was secured and was not even then, if it was accepted, an acceptance in compliance with the conditions."

The evidence is all to the effect that this stock was tendered to the appellant company upon the understanding and condition that, if accepted, stock of corresponding value would be released to Mr. Hurley and his associates. In other words, it never was contemplated to increase by the value of this stock the indemnity of appellant, and appellant could not have so understood. It is true that appellant's representative took physical possession of the Carry certificate, but there the matter rested, because appellant failed to assent to the condition that this stock be substituted for an equal amount of Hurley stock. It is, as found by the trial court, largely a question of fact, and that question is so free from doubt that we shall not discuss it further.

[2, 3] One other point remains: The record shows that when the Hurley letters were offered in evidence they were admitted "over the objection of the plaintiff," and that "an exception to the ruling of the court on each and every offer" was allowed. This objection was altogether too general. D. C. v. Duryee, 29 App. D. C. 327, 10 Ann. Cas. 675; Dixon v. Great Falls & O. D. R. Co., 43 App. D. C. 206; D. C. v. Woodbury, 136 U. S. 450, 10 Sup. Ct. 990, 34 L. Ed. 472. Moreover, as already intimated, the substance of these letters had been brought to the attention of the court through the cross-examination of Mr. Hurley, so that appellant could not have been prejudiced.

The decree is affirmed, with costs.

Affirmed.